IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **H.L. LIBBY CORP.,** and **REGENCY INDIANA ENTERPRISES, L.P.** <br>          Plaintiffs, <br><br>     v. <br><br> **FIREMAN'S FUND INSURANCE COMPANY** and **NATIONAL SURETY CORPORATION,** <br><br>          Defendants. | <br><br><br><br><br>2:03cv601<br>**Electronic Filing** |

**MEMORANDUM OPINION**

July 24, 2006

**I.     INTRODUCTION**

On March 25, 2003, Plaintiffs, H.L. Libby Corp., and Regency Indiana Enterprises, L.P. ("Plaintiffs"), filed a complaint in the Court of Common Pleas of Indiana County, Pennsylvania, alleging a breach of contract based on the failure to defend under a commercial liability insurance policy, and violation of 42 PA. CON. STAT. ANN. § 8371 concerning good faith and fair dealing on the part of Defendants, Fireman's Fund Insurance Company and National Surety Corporation ("Defendants"). Pursuant to 28 U.S.C. § 1441, Defendants removed the action to this Court based upon complete diversity of citizenship and an amount in controversy in excess of Seventy-Five Thousand ($75,000.00) Dollars. 28 U.S.C. § 1332. Defendants have filed a motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs have responded and the matter is now before the Court.

**II.    STATEMENT OF THE CASE**

This is an action for breach of contract and alleged bad faith arising from Defendants' refusal to pay pre-tender defense costs in an underlying lawsuit ("Specialty I"), as well as the failure to provide a defense in a subsequent and separate underlying

action ("Specialty II") adjudicated in the Court of Common Pleas of Indiana County, Pennsylvania.

The underlying lawsuits resulted from the alleged pollution of a collection pond following a heavy rain. Specialty I was filed in April 2001 in the Court of Common Pleas of Indiana County, Pennsylvania at Civil Action No. 50792. At the time, Plaintiffs had a Commercial General Liability ("CGL") long form CG 00 01 07 98 insurance policy with Defendants. Defendants did render a defense in Specialty I, however, Defendants only paid approximately one-third of Plaintiffs' alleged overall legal costs in the litigation. The parties' breach of contract dispute involving these costs is not a subject of this motion for partial summary judgment. The allegations of bad faith in Defendants' failure to pay such costs, however, are included in the motion.

Specialty II was filed in the Court of Common Pleas of Indiana County at Civil Action No. 51728. This action was consolidated for purposes of discovery and trial with cases at Nos. 52753 and 11843. The action at 51728 was entitled a "Complaint in Equity," and sought only equitable relief in the form of a "special, preliminary, and permanent injunction." *See* Defendants' Exhibit 3. The complaint did not seek any form of legal or monetary damages, including any diminution in property value. *Id.*

Defendants assigned both of the Plaintiffs' claims for coverage in Specialty I and II to Ms. Irene Varga. Ms. Varga determined that the action at 51728 did not fall within coverage and Defendants declined to defend Plaintiffs in Specialty II. In Specialty II, Plaintiffs filed Preliminary Objections to the Complaint. Plaintiffs allege that the Motion in Opposition to those Preliminary Objections sought damages for diminution in value to the property. Defendants, however, contend that they were not provided with that document at that time. Defendants' Brief in Support, p. 4. Further, no such allegations of damage were set forth in the Complaint at 51728. *See* Defendants' Exhibit 3. On January 30, 2002, Defendants' denied coverage in Specialty II on the basis that it was not an occurrence as defined within the policy; it was an action for injunctive relief only. *See* Defendants' Exhibit 7.

### III.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law.  To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c),  its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e).  Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay*

*Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

IV. **DISCUSSION**

This Court is bound in determining which law to apply by the choice of law rules in the state in which it sits. *Kruzits v. Okuma Mach Tool, Inc.,* 40 F.3d 52, 55 (3d Cir. 1994); *citing Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 497 (1941). Pennsylvania's conflict of laws principles dictate that an insurance contract is guided by the law of the state in which it is delivered. *I.C.D. Industries, Inc., v. Federal Insurance Co.,* 879 F.Supp. 480, 484 (E.D. Pa. 1995). Here, no proof has been offered as to where the contract was delivered and the law will presume that the insured's state of residence is the place of delivery. *Id.*; *Jamison v. Miracle Mile Rambler, Inc.,* 536 F.2d 560, 562 n.1 (3d Cir. 1976) *citing Crawford v. Manhattan Life Ins. Co.,* 208 Pa. Super. 150, 155 (Pa. Super. 1966). Because the insured Plaintiff is a Pennsylvania resident, the Court will apply Pennsylvania law.

    A. <u>Duty to Defend</u>

The substantive Pennsylvania law regarding the duty to defend for an insurer is both compelling and rich. Moreover, the duty to defend is separate and distinct from the duty to indemnify under Pennsylvania law. *Erie Ins. Exchange v. Transamerica Ins. Co.,* 533 A.2d 1363, 1368 (Pa. 1987).[1] Under Pennsylvania law, it is clear that the allegations in the complaint are the sole points of reference for determining whether an insurer has an obligation to defend a claim. *I.C.D. Industries, Inc., v. Federal Insurance Co.,* 879 F. Supp. at 487; *Etna Casualty and Surety Co. v. Roe,* 650 A.2d 94, 98 (Pa. Super. 1994); *Stidham v. Millvale Sportsman's Club,* 618 A.2d 945, 953-54 (Pa. Super 1993); *see also Wilson v. Maryland Casualty Co.,* 377 Pa. 588, 594 (1959) ("[T]he rule everywhere is that the obligation of a casualty insurance company to defend an action

---

[1] The duty to indemnify in the instant action is not at issue, as the ultimate resolution of the underlying cases was in favor of the Plaintiffs. Defendants' Brief in Support, p. 4.

4

brought against the insured is to be determined solely by the allegations of the complaint in the action").

An insurer has a duty to defend whenever the allegations in a complaint against its insured, when taken as true and construed in favor of the insured, set forth a claim which potentially falls within the coverage provided by the policy. *Lucker Mfg. Inc. v. The Home Ins. Co.,* 23 F.3d 808, 821 (3d Cir. 1994). The duty to defend is triggered even if the allegations against the insured are groundless, false, or fraudulent. *D'Auria v. Zurich Ins. Co.,* 507 A.2d 857, 859 (Pa. Super. 1986).

Moreover, it is not the particular cause of action pleaded within a complaint that is determinative of whether coverage has been triggered. Rather, it is necessary to look at the factual allegations contained in the complaint. *Mutual Beneficial Ins. Co. v. Haver,* 555 Pa. 534, 538-39 (1999). Otherwise, as Justice Zappala succinctly noted, "litigation would be encouraged through the use of artful pleadings to avoid exclusions in liability insurance policies." *Id.* at 539. Therefore, if the complaint avers facts that might support recovery under the policy, coverage is triggered and the insurer has a duty to defend. *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 226 (3d Cir. 2005) *citing Gen. Accident Ins. Co. of Am. v. Allen,* 692 A.2d 1089, 1095 (Pa. 1997).

However, the potential scope of coverage under an insurance policy must be examined before it can be determined whether a complaint is potentially covered by the policy. *Lucker Mfg., Inc.,* 23 F.3d at 813. The inquiry into coverage is antecedent to ascertaining whether the duty to defend exists. *Id.; citing Erie Ins. Exchange v. Transamerica Ins. Co.,* 533 A.2d 1363, 1368 (Pa. 1987).

Interpretation of an insurance policy is a question of law. *Sikirica v. Nationwide Ins. Co.,* 416 F.3d at 220 *citing Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 496 (3d Cir. 2002). *See also Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 304 (1983). The basic inquiry a court must make is whether the insurance contract's disputed terms are ambiguous. *See St. Paul Fire & Marine Ins. Co. v. Lewis,* 935 F.2d 1428, 1431 (3d Cir. 1991). In construing the policy, if the words of the policy are clear

and unambiguous, the court must give them their plain and ordinary meaning. *Sikirica v. Nationwide Ins. Co.,* 416 F.3d at 220 *citing Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760-61 (3d Cir. 1985). When a term is ambiguous, and the intention of the parties cannot be discerned from the policy, the court may look to extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the parties, and the circumstances surrounding the making of the contract. *Pac. Indem. Co. v. Linn*, 766 F.2d at 761. Ambiguous terms must be strictly construed against the insurer, but the policy language must not be tortured to create ambiguities where none exist. *Id.*

In the instant action, the CGL states the following:

> Section I – Coverages
>
> Coverage A. Bodily Injury and Property Damage Liability
>
> 1. Insuring Agreement
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. We may at our discretion investigate any **occurrence** and settle any claim or **suit** that may result.

Defendants' Exhibit 9, p. 1. (emphasis in original). "Suit" is further defined within the policy as "a civil proceeding in which damages because of **bodily injury, property damage** or **personal and advertising injury** to which this insurance applies are alleged." Defendants' Exhibit 9, p.15 (emphasis in original).

A policy provision is ambiguous if reasonably intelligent people would honestly differ as to its meaning when considering it in the context of the entire policy. *Westport Ins. Corp.,* 284 F.3d at 497; *citing Northbrook Ins. Co. v. Kuljian Corp.,* 690 F.2d 368, 372 (3d Cir. 1982). Black's Law Dictionary distinguishes the singular "damage" from its plural form, "damages," which are succinctly defined as "compensation in money for a loss or damage." BLACK'S LAW DICTIONARY 351 (5th ed. 1979). The RESTATEMENT, SECOND OF TORTS, § 12A, defines "damages" as "a pecuniary compensation or

6

indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury, whether to his person, property, or rights, through the unlawful act or omission or negligence of another. A sum of money awarded to a person injured by the tort of another." *Id*. at 352..

Moreover, this Court is mindful of the persuasive authority of other courts concerning the meaning of the term "damages," especially in environmental insurance law. Those courts have adopted a definition of the word "damages" which precludes equitable claims, such as those for response costs and injunctive relief. *See Maryland Casualty Co. v. Armco, Inc.,* 822 F.2d 1348, 1352 (4th Cir. 1987), *cert. denied,* 484 U.S. 1008 (1988) (distinguishing "damages" from claims for injunctive or restitutionary relief, and stating that "damages" are 'payments to third persons when those persons have a legal claim for damages.'"); *Cincinnati Ins. Co. v. Milliken & Co.,* 857 F.2d 979, 981 (4th Cir. 1988) (applying South Carolina law and finding that the term "damages" in an insurance context is not ambiguous and means "legal damages."); *Continental Insurance Cos. v. Northeastern Pharmaceutical & Chemical Co.,* 842 F.2d 977 (8th Cir. 1988) (*en banc*), *cert denied,* 488 U.S. 821 (1988); *Patrons Oxford Mutual Insurance Co. v. Marois,* 573 A.2d 16, n. 48 (Me. 1990).

All of the above definitions share a common theme of damages being rooted in a theory of monetary compensation. A reasonably intelligent person, therefore, would define damages within the CGL policy as relating to the payment of money. Such a definition of "damages" is clear and unambiguous within the policy and gives plain and ordinary meaning to the word "damages." Thus, the Defendants were contractually obligated to defend Plaintiffs against any civil suit seeking *monetary damages* against Plaintiffs as the result of bodily injury or property damage.

Applying this clear and unambiguous coverage analysis to the insurance policy, it is clear that Plaintiffs' argument in favor of the duty to defend fails. Moreover, Plaintiffs deny the clear Pennsylvania case law that the duty to defend springs from the

7

allegations within the complaint, but offer no authority otherwise. Plaintiffs' Brief in Opposition, pp. 7-8.

The Complaint at 51728 prays for only equitable relief, specifically a "special, preliminary, and permanent injunction," at the end of each count. Nowhere in the complaint are monetary damages either alleged or prayed for. Therefore, there was no duty to defend on the part of the Defendant insurer because Specialty II was not a civil action seeking legal damages against Plaintiffs as the result of bodily injury or property damage.

Plaintiffs further argue that their attorney believed that the plaintiffs' counsel in the Complaint at 51728 was seeking money damages for a continuing trespass and diminution of value in their property. *Id.* at 9. Plaintiffs point to phone conversations between opposing counsel in Specialty II and the Plaintiff's Brief in Opposition to Regency's Preliminary Objections, which stated that Plaintiff seeks "money damages for diminution in value," in an attempt to bolster their argument. Plaintiffs, however, never provided Defendants with the brief that alleged such damages. *See* Defendants' Exhibit 6. Irregardless, it is an undisputed fact that the Complaint at 51728 was never amended to seek recovery for any monetary damages, thereby remaining a complaint based in equity.

Defendants correctly cite to *Scopel v. Donegal Mutual Insurance Company,* 698 A.2d 602 (Pa. Super. 1997) (holding that the "allegations included within the four corners of the complaint must be dispositive of an insurer's duty to defend), which is instructive on this issue. In *Scopel*, the complaint filed by the insured alleged intentional torts. *Id.* at 604-05. During discovery, a potential count of negligence was uncovered, but Scopel never amended his complaint. *Id.* at 606-07. The insurance company refused to defend based on a policy exclusion against intentional torts. Scopel argued that the duty to defend was triggered by the discovery testimony. *Id.* at 606. The court disagreed with this argument, finding that even if the depositions had been properly supplemented as part of the certified record, there was "no reason to expand the well-reasoned and

long-standing principle that an insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint itself." *Id.*; *see also Mutual Benefit Ins. Co. v. Haver*, 555 Pa. at 538; *General Accident Insurance Co. of America v. Allen*, 547 Pa. 693, 706 (1997). In a similar fashion, Plaintiffs assert that there was additional, or outside, information which put the insurance company on notice that plaintiffs in Specialty II were seeking damages. To give credence to such a claim would force insurance companies to constantly monitor all phases of pre-trial litigation to determine if coverage could be potentially triggered. Such a decision would be contrary to well-established Pennsylvania law setting forth the duty of an insurer to defend.

Furthermore, Plaintiffs argue that the simply boilerplate phrase, "costs, attorney's fees and other and further relief as the Court deems just and proper," is in itself a claim for damages. Plaintiffs cannot cite any Pennsylvania cases for this proposition, and the Third Circuit Court of Appeals case cited does not hold that such a "catchall phrase" will suffice as a claim for legal damages. *Lewis v. Highland,* 554 F.2d 93, 103 (3d Cir. 1977) ("While we do concede that in many circumstances that phrase may be so read, we decline to give it that content here.").

The record, even in a light most favorable to Plaintiffs, fails to show that Defendant's had a duty to defend as a matter of law. Therefore, the motion for partial summary judgment with respect to the failure to render a defense in the underlying action at No. 51728 must be granted.

B.   Bad Faith

At common law there was no redress for an insurer's bad faith denial of claims under an insurance policy. *See D'Ambrosio v. Pennsylvania National Mutual Casualty Ins. Co.,* 431 A.2d 966 (Pa. 1981). The Pennsylvania legislature created a statutory remedy for such conduct by enacting 42 PA. CONS. STAT. § 8371, which provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

>>(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%;
>
>>(2) Award punitive damages against the insurer; and
>
>>(3) Assess court costs and attorney's fees against the insurer.

42 PA. CONS. STAT. § 8371.

The term "bad faith" is not defined in the statute, but the Pennsylvania Superior Court has defined it as "any frivolous or unfounded refusal to pay proceeds of a policy." *W.V. Realty Inc. v. Northern Insurance Company of New York,* 334 F.3d 306, 311-12 (3d Cir. 2003); *quoting Terletsky v. Prudential Prop. and Cas. Ins. Co.,* 649 A.2d 680, 688 (Pa. Super. 1994). To prove a claim of bad faith, Plaintiffs must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim. *W.V. Realty Inc. v. Northern Insurance Company of New York,* 334 F.3d at 312; *Keefe v. Prudential Prop. and Cas. Ins. Co.,* 203 F.3d 218, 225 (3d Cir. 2000); *Klinger v. State Farm Mutual Auto Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997). However, the statute does not require a plaintiff to prove that the insurer consciously acted pursuant to such a motive or interest; it is enough if the insurer recklessly disregarded the lack of a reasonable basis in denying benefits. *Klinger v. State Farm Mutual Auto Ins. Co.*, 115 F.3d at 233; *quoting Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d at 688.

Pennsylvania law defines reckless conduct as the "acting or failing to act in complete disregard of a risk of harm to others which is known or should be known to be highly probable and with a conscious indifference to the consequences." *See* Pennsylvania's Suggested Standard Jury Instructions § 3.17. It is a long-standing principle that mere negligence in ascertaining whether a claim is covered is insufficient to support a recovery for bad faith insurance practices. *Polselli v. Nationwide Mut. Fire Ins. Co.,* 23 F.3d 747, 751 (3d Cir. 1994); *Jung v. Nationwide Mutual Ins. Co.,* 949 F.

Supp. 353, 356 (E.D. Pa. 1997). Moreover, an incorrect analysis of the applicable law is insufficient to sustain bad faith liability. *See Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d at 752; *Jung v. Nationwide Mutual Ins. Co.*, 949 F. Supp. at 356; *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d at 690.

Here, Plaintiffs set forth twelve (12) individual instances of bad faith on the part of the Defendants. *See* Plaintiffs' Brief in Opposition, pp. 5-6. Several allegations of bad faith pertain to Defendants' denial of coverage in the action at 51728. *Id.* at 16-17. However, as the policy did not trigger a duty to defend, Defendants' denial was clearly legitimate. It is axiomatic that where no duty to defend exists, a bad faith claim regarding the insurer's denial of coverage must fail. *See USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 202 (3d Cir. 2006); *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999) (affirming district court holding that, under Pennsylvania law, "bad faith claims cannot survive a determination that there was no duty to defend, because the court's determination that there was no potential coverage means that the insurer had good cause to refuse to defend."); *see also Ash v. Gainsco, Inc.*, 23 Fed Appx. 797, 798 (9th Cir. 2001); *Home Ins. Co. v. Hartford Fire Ins. Co.*, 164 Fed Appx. 950 (11th Cir. 2006) (finding that because coverage didn't exist, there can be no bad faith); *VBF, Inc. v. Chubb Group of Ins. Cos.*, 263 F.3d 1226, 1234 (10th Cir. 2001).

Plaintiffs further allege that Defendants have engaged in misconduct during litigation, specifically the deposition testimony of Kathleen Reilly. Plaintiffs' Brief in Opposition, p.18. Under Pennsylvania law, bad faith is actionable regardless of whether it occurs before, during, or after litigation. *W.V. Realty Inc. v. Northern Insurance Company of New York*, 334 F.3d at 313; *citing O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. 1999). However, this does not mean that insureds may recover under Pennsylvania's bad faith statute "for discovery abuses by an insurer or its lawyer in defending a claim predicated on its alleged prior bad faith handling of an insurance claim." *W.V. Realty Inc. v. Northern Insurance Company of New York*, 334 F.3d at

11

313; *quoting Slater v. Liberty Mut. Ins. Co.,* 1999 WL 178367, at *2 n.3 (E.D. Pa. March 30, 1999). In cases involving nothing more than alleged discovery violations, the courts have declined to find bad faith, but bad faith claims involving conduct intended to evade the insurer's obligations under an insurance contract have been permitted to go forward. *W.V. Realty Inc. v. Northern Insurance Company of New York*, 334 F.3d at 313-14.

In reviewing Kathleen Reilly's deposition testimony in a light most favorable to Plaintiffs, it can possibly be viewed as evasive. *See* Plaintiffs' Exhibit 64, pp. 45-48, 55-57, 63-68, and 75-82. The question, however, is whether her testimony and actions fall into the "discovery violation as insurance bad faith" category. *See W.V. Realty Inc. v. Northern Insurance Company of New York*, 334 F.3d at 314. The record, however, fails to supply the clear and convincing evidence of discovery violations, let alone discovery violations that rise to the level of insurance bad faith.

The Court is aware that, under *O'Donnell,* there are cases in which the insurer's conduct during the course of litigation is a violation of the insurer's fiduciary duty to the insured. *See W.V. Realty Inc. v. Northern Insurance Company of New York*, 334 F.3d at 315; *O'Donnell v. Allstate Ins. Co.*, 734 A.2d at 909. The finding of liability against an insurer must arise out of the contractual relationship with the insured and occur during pending litigation. *See W.V. Realty, Inc.,* 334 F.3d at 315  It is important to note that insurer's dishonest conduct during discovery could potentially violate its fiduciary duty of candor. *Id.*  The record does not support a claim that Defendants breached a duty of good faith during this litigation. Summary judgment on Plaintiffs' claim of bad faith with regard to the denial of coverage in the action at 51728 shall be granted.

Plaintiffs also allege bad faith in Defendants' refusal to pay costs incurred by Plaintiffs' retained counsel in Specialty I. Specifically, Plaintiffs accuse Defendants of recklessly disregarding that notice to its agent is notice to the insurer. Plaintiffs' Brief in Opposition, p. 16. Defendants admit that there is a dispute between the parties as to whether or not Plaintiffs are entitled to those fees. Defendants' Brief in Support, p. 13.

Defendants further argue that their position was reasonable under the language of the policy and an agency agreement. *Id.* However, this Court cannot find an absence of bad faith as a matter of law.

## V.   CONCLUSION

For the foregoing reasons, the Court finds that Defendants did not have a duty to defend the action at No. 51728 (Specialty II) as a matter of law. Plaintiffs' bad faith claims related to the action at No. 51728 will also be dismissed. However, there are genuine issues of material fact in existence that preclude a finding that Defendants did not engage in bad faith in its refusal to pay costs incurred by Plaintiffs in Specialty I. An appropriate order will follow.

s/ David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc:   Stanley P. DeGory, Esquire
      Bonya, Gazza & DeGory
      134 South Sixth Street
      Indiana, PA 15701

      Matthew M. Haar, Esquire
      Saul Ewing LLP
      Two North Second Street
      7th Floor
      Harrisburg, PA 17101